MILES ELLIOTT, Movent and Petitioner, Respondent, BESSIE G. WELKER, Administratrix of the Estate of MERN G. WELKER, Deceased, Plaintiff, v, WABASH RAILWAY COMPANY, Defendant, WALKER D. HINES, United States Director General of Railroads, Defendant, Appellant.

In the Kansas City Court of Appeals. May 23, 1921.

1. **ATTORNEY AND CLIENT: Lien: Motion to Enforce Lien: A Motion by Attorney to Enforce Attorney's Lien Held, to be an Original Proceeding and not a Mere Motion Filed in the Suit of His Client.** Where following a settlement of suit instituted by plaintiff's attorney to recover damages, the attorney filed a proceeding designated as a motion to enforce attorney's lien against defendants which alleged every fact necessary to a statement of an independent cause of action, and defendants made no objection in lower court to the form of the proceeding, but assumed that it was regular in this respect and filed their plea in abatement and to the merits, to which a reply consisting of a general denial was filed by the attorney, and where a trial was had upon the issues thus joined and evidence was received on behalf of all parties, declarations of law and findings of fact were requested by such parties, and the case was submitted to the court, and judgment

(348)

rendered, all in conformity with the rules and practices observed in civil actions, the fact that the settlement complained of was made before judgment, did not prevent the attorney from proceeding by motion in original action to enforce his lien, under the attorney's lien statute, sections 690, 691, R. S. 1919, the motion being in effect an original proceeding.

2. **PROCESS: Summons: Return of Sheriff Conclusive upon Parties to Suit and their Privies and can only be Controverted by Direct Attack in an Action Against the Sheriff for False Return.** Even though the return of the sheriff showing service of summons on the defendant was false, it is conclusive upon the parties to the suit and their privies and can only be controverted in a direct· attack upon it in an action against the sheriff for false return.

3. **ATTORNEY AND CLIENT: Lien: Notice: Notice to Defendant of Attorney's Lien not Required where Settlement was Made after Commencement of Suit.** Where settlement was made after suit was brought, notice to defendant of lien of plaintiff's attorney was not required.

4. **RELEASE: Stipulation of Dismissal: Railroad Company Accepting Benefits of Settlement by Filing Stipulation of Dismissal was Precluded from Asserting that it did not Make Settlement.** Where a railroad company entered into a stipulation which was signed by it through its attorney reciting that the subject-matter of the suit had been fully settled, and stipulating that the suit should be dismissed, the railroad company was precluded in a proceeding to enforce an attorney's lien, from asserting that the settlement was made by Director General of Railroads and not by it, in view of the fact that it accepted the benefits of the settlement by filing the stipulation of dismissal.

5. **JURISDICTION: Federal Control Act: Question as to Whether Railroad or Director General of Railroads can be Sued for Acts of Latter's Servants not a Jurisdictional Question and Court will Determine from Hearing on Merits if Federal Control Act is a Bar to the Action.** The question of whether the railway company or the director General of Railroads can be sued for the acts and conduct of the latter's servants is not a jurisdictional question and the courts will retain jurisdiction to try such a suit on the merits and to determine if the Federal Control Act, together with General Order No. 50, is or is not a matter in bar to the merits of the action.

6. **ATTORNEY AND CLIENT: After Compromise of Claim Upon which Suit was Filed in Good Faith in Action to Enforce Attorneys Lien, Attorney not Required, in Order to Establish Lien, to Show Claimant was Entitled to Recover.** Where plaintiff had a *bona-fide* claim against railway company which was asserted in good faith and compromised after institution of suit, there was a sufficient

consideration for the settlement, and an attorney seeking to enforce attorney's lien in order to recover, was not required to show that the claim was a valid one in the sense that claimant be able to recover on it.

7. **APPEAL AND ERROR:** Finding of Trial Court, on Conflicting Evidence, Conclusive on Appellate Court. Where there is a conflict in the evidence, the finding of the trial court, sitting as a jury, is conclusive on the appellate court.

8. ————: Where Total Settlement was Twice the Amount Paid Claimant: Attorney Entitled to Recover One-half of Whole Settlement, which is a Sum Equal to that Paid his Client. Where the amount paid claimant in settlement of suit was only her part under attorney's contract, and not the attorney's portion, the claimant's share of settlement under contract being fifty per cent of the whole sum, the attorney was entitled to recover one-half of whole settlement which is a sum equal to that paid his client.

9. **RAILROADS:** Transitory Actions: Venue: State Law as to Venue Cannot be Modified or Limited by Orders of Director General. The venue in transitory causes of action provided by the laws of the State cannot be modified or limited by orders of the Director General of Railroads.

Appeal from the Circuit Court of Livingston County. —*Hon. Arch B. Davis,* Judge.

AFFIRMED.

*N. S. Brown, W. W. Davis* and *S. J. & G. C. Jones* for appellant.

*Kelly, Buchholz, Kimbrell & O'Donnell* for respondent.

BLAND, J.—This is a suit under the attorney's lien act.

The facts show that on April 2, 1918, while the defendant railway company was in the charge of the Federal Government and was being operated by the Director General of Railroads, Mern G. Walker, while employed as a brakeman upon the railroad, was killed at Shenandoah, Iowa. At the time of his death he was a resident of Shelby County, Missouri. Letters of Administration on his estate

were granted to his wife, Bessie G. Welker, by the probate court of Shelby county. On May 18, 1918, said Bessie G. Welker as Administratrix entered into a contract with Miles Elliott of Chillicothe, Missouri, an attorney at law who in the printed record is designated as movent, employing said Elliott as her attorney to represent her to "investigate, settle, adjust, compromise or bring suit upon her claim against the Wabash Railway Company on account of the death of her said husband," and agreeing to pay him "fifty per cent of all money received upon the above claim or cause of action, whether by suit, compromise or settlement." After the execution of said contract Mr. Elliott drew up a written notice of his attorney's lien and placed it in the hands of the sheriff of Livingston county for service. It was addressed to the Wabash Railway Company, a Corporation, reciting the substance of his contract with Mrs. Welker. This notice was dated May 23, 1918, and was served by the sheriff on the 24th day of May, 1918, his return reciting that he left a copy of the notice at the business office of the railway company with W. R. Stepp, the agent and person in charge of said office, etc.

On June 5, 1918, Elliott filed suit in the circuit court of Livingston county to recover damages on account of the death of said Mern G. Welker, in which suit Bessie G. Welker, administratrix of the estate of Mern G. Welker, deceased, was plaintiff and the Wabash Railway Company, a corporation, was defendant. At the January term, 1919, in the circuit court of Livingston county a stipulation was filed in said cause for the dismissal of the same, signed by plaintiff and the Wabash Railway Company by C. G. Williamson, its counsel, and reciting that the subject-matter of the cause had been fully settled and stipulating that the suit should be dismissed at defendant's costs.

A few days after the filing of this stipulation and before suit was dismissed Elliot filed in the cause a motion entitled "motion to enforce attorney's lien." At the April term of said court, said Elliott, upon leave

of court, filed an "amended motion to enforce attorney's lien," making Walker D. Hines, Director General of Railroads, as well as the Wabash Railway Company, defendant. The amended motion alleged that at all the times mentioned in said motion the "Wabash Railway Company and its railway was to some extent and degree under the administration and control of the United States Railway Administration and of the United States Director General of Railroads," under the "Federal Control Act" and proclamations of the President; that under General Order No. 50 the Director General of Railroads ordered that he be made a party to all suits against railroads, and "that the action herein is such a suit;" that Mern G. Welker, was the employee of both defendants and was killed by their negligence. Said motion further recited the granting of Letters of Administration to Bessie G. Welker, the contract between the latter and Elliott, the notice served upon the Wabash Railway Company and that the agent upon whom such notice was served was agent of the Director General of Railroads as well as of the Wabash Railway Company. It further alleged that defendants with full knowledge of the terms and provisions of said contract and without the knowledge or consent of Elliott made a settlement with said administratrix and in pursuance thereof paid her the sum of $4,000 together with $162.85 for funeral and burial expenses of the deceased; that "your movent and petitioner has a lien upon the cause of action in the said cause in the amount of Four Thousand, One Hundred Sixty-two and 85/100 Dollars, and that to permit the dismissal of this cause under said alleged agreement for dismissal and to enter judgment of dismissal thereunder would wrongfully and illegally deforce movent and petitioner of his said lien" and prayed judgment in said sum mentioned.

The separate answer of the railway company is: First, a plea in abatement and to the jurisdiction of the court over said defendant, alleging that at the time of the death of the deceased said railway company did not

operate, control or manage and was not in possession of the property, railroad rights and franchises of the Wabash Railway Company and that such were in the possession of the Federal Government under the control, management and operation of the Director General of Railroads; that defendant did not have or maintain an office or place of business in Chillicothe, Livingston County, Missouri, in charge of an agent upon whom process could be served; that the process served in the cause was not served upon an agent of said defendant. It further alleged that the court had no jurisdiction over the cause for the reason that under the orders of the Director General of Railroads suits or causes of action of this character should be brought at the place where the cause of action accrued or where the plaintiff resided; that under General Order No. 50 of the Director General of Railroads the suit should have been brought against the Director General of Railroads and not against the Wabash Railway Company, and "that process was issued against this defendant in violation of said order." The answer also contains a plea to the merits, denying that any person authorized to represent it had made a settlement with the administratrix and that it had paid any money in any such sum. It further denied that it had any notice of knowledge of any contract existing between plaintiff and Elliott or that such notice was served on any agent or employee of the defendant.

The separate answer of the Director General of Railroads, Walker D. Hines, is first a plea in abatement and to the jurisdiction of the court, alleging that at all times mentioned in the petition of the administratrix and in the motion of Elliott the property, rights and franchises of the Wabash Railway Company were in the sole possession and under the control of the Federal Government and not under the control, operation and management of the Wabash Railway Company; that under General Order No. 50 of the Director General of Railroads said Director General was in sole possession, management and control of the property of the defendant Wabash Railway

Company; that process was issued against the Wabash Railway Company as sole defendant in the original cause of said administratrix against said company; that the return of said process in said cause shows that the only defendant attempted to be served was the Wabash Railway Company; that no process whatever was ever issued against Hines Director General of Railroads or his predecessor in office; that suit was not brought where the cause of action arose nor at the residence of plaintiff, contrary to the orders promulgated by authority of law. Said answer by way of a plea to the merits denies that any process was ever issued or served against the Director General of Railroads or that he had any knowledge of any contract existing between Elliott and the administratrix. The answer further contained a general denial. The reply was a general denial. There was a trial before the court resulting in a judgment in favor of Elliott and against the Wabash Railway Company in the sum of $4,162.85 and costs, and in favor of the Director General of Railroads. Defendant, Wabash Railway Company, has appealed.

Appellant contends that there is no authority under the attorney's lien statutes (Sections 690, 691, R. S. 1919), for a proceeding to enforce an attorney's lien by motion in the original cause where the settlement complained of is made before judgment, citing among other cases the case of Mills v. Met., 221 S. W. 1. Respondent admits that if this suit were based on section 690 of the attorney's lien statute, the contention would be well taken but contends that he has a right to proceed by motion in the original cause where the proceeding is based on section 691. We do not find it necessary to pass upon these contentions for the reason that the situation in this case appears to be the same as that in the Mills case. While the record designates this proceeding as a motion to enforce attorney's lien and the motion is filed in the cause of Bessie G. Welker as administratrix of the estate of Mern G. Welker, deceased, against the Wabash Railway Company, and while such designation might indi-

cate that it was a proceeding in the original case, an understanding of all the facts in the proceeding would indicate otherwise. The first pleading in the present proceeding alleges every fact necessary to a statement of an independent cause of action against the defendant Wabash Railway Company in an action at law for the enforcement of Elliott's lien, and prays judgment against said defendant for the amount thereof. Appellant makes no point that it was not served in this proceeding as in an ordinary action nor did it object in the lower court to the form of the proceeding but assumed that it was regular in this respect and filed its plea in abatement and to the merits. To this answer Elliott filed a reply consisting of a general denial. A trial was had upon the issues thus joined and evidence was received on behalf of all the parties, declarations of law and findings of fact were requested by such parties, and the case was submitted to the court and judgment rendered, all in conformity with the rules and practices observed in civil actions in this State. The case was tried upon the theory that this proceeding was regular. The judgment rendered was a money judgment against the defendant and nothing more. As before stated, the facts in reference to this matter were not essentially different from those that appeared in the Mills case and under the holdings in that case defendant's point is not well taken.

Whether Elliott could by his amended motion make the Director General of Railroads a party defendant jointly with the Wabash Railway Company, is a question that is not before us for decision. There was no question raised in the trial court as to an improper joinder of parties defendant and the Director General of Railroads has not appealed.

It is contended that the circuit court of Livingston county had no jurisdiction over the Wabash Railway Company in this case under the provisions of the Act of March 31, 1918. [Sections 3115-3/4a-3115-3/4p, U. S. Comp. St. 1918, Comp. St. Ann. Supp. 1919.] In this connection it is insisted that in view of the fact that

the Wabash Railway Company was in charge of and under the control of the Federal Government and being operated through the Director General of Railroads, the deceased was an employee of the Director General of Railroads and was not in the employ of the defendant railway company, and in view of the fact that General Order No. 50 of the Director General of Railroads providing that suits of this nature should be brought against the Director General and not otherwise, that the original suit herein was not only improperly brought against the Wabash Railway Company but could not be maintained against the same nor could Elliott's suit to recover his attorney's fees, and that it follows that the service of the notice of Elliott's contract on Stepp, station agent of the Wabash Railway Company, was not notice to the Wabash Railway Company, Stepp being an employee of the Director General and not of the Wabash Railway Company, and that service of the original summons in the suit of the administratrix upon Stepp was void and did not confer any jurisdiction upon the court over the defendant. Pertinent parts of General Order No. 50, promulgated October 28, 1918, reads as follows:

"Whereas since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits and proceedings hereinafter referred to, based on causes of action arising during or out of Federal control should be brought directly against the said Director General of Railroads and not against said corporations:

IT IS THEREFORE ORDERED, that actions at law, suit in equity and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage of property, arising since December 31, 1917, and growing out of the possession, use, con-

Elliott v. Wabash Ry. Co.

trol or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures.''

The summons in the original cause was executed by the sheriff and in his return he recites that he executed the summons by leaving a copy of the writ and a copy of the petition thereto attached with W. R. Stepp, agent of the defendant, Wabash Railway Company, at the office of the defendant in Chillicothe, Livingston County, Missouri, said Stepp being the agent and person in charge of the business office of the defendant in Chillicothe, the president or other chief officer not being found in the county. Even though the return of the sheriff showing service of summons on the defendant was false, it is conclusive upon the parties to the suit and their privies and can only be controverted in a direct attack upon it in an action against the sheriff for false return. [Smoot v. Judd, 184 Mo. 508, 518; Vicksburg, S. & P. R. Co. v. Anderson-Tully Co., 261 Fed. 741, 744.]

There is nothing in the Act of Congress or the orders of the Director General of Railroads to indicate that the Wabash Railway Company as a corporation was not in existence or that its entity as a corporation was suspended even after its business and the operation of its railroad was taken over by the Federal Government (Hines v. Dahn, 267 Fed. 105, 109, 110), and it is not impossible that said corporation might have had an agent in Chillicothe upon whom summons could have been served or might have maintained in its employ the usual officers and attorneys. [Hite v. St. Joseph & G. I. Ry. Co., 225 S. W. 916, 920; Vicksburg, S. & P. R. Co. v. Anderson-Tully Co., supra.] Of course, we do not mean to say that the fact that the

railway might have been sued would make it liable for the acts of the Director General of Railroads, that was a matter of defense and did not go to the jurisdiction of the Court.

There was evidence tending to show that one Williamson, who was a claim agent and attorney employed by both the Director General and the Wabash Railway Company, made the settlement with the administratrix. The contract of settlement was in the form of a release and recited that the money was paid by the Director General. However, the voucher for the money was signed by "Wabash R. R. Federal Account." The release stipulates that both the Director General and the railway company were released. Williamson as attorney for the Wabash filed a stipulation in the original cause of Bessie G. Welker, Administratrix of the estate of Mern G. Welker, deceased, v. Wabash Railway Company, reciting that the subject-matter of the suit had been fully settled and stipulating that the suit should be dismissed at defendant's costs. This stipulation for dismissal was signed by the Wabash Railway Company by Williamson as counsel. The evidence shows that Williamson before he settled with the administratrix knew of Elliott's contract with her. As the settlement was made after suit was brought no notice of Elliott's lien was required. [Taylor v. Railroad, 207 Mo. 495.] Appellant is in no position to say that it did not make settlement with the administratrix in view of the fact that it accepted its benefits by filing the stipulation of dismissal. [Wilson v. St. Joseph & G. I. Ry. Co., 211 S. W. 897; Reed v. John Gill & Sons Co., 201 Mo. App. 457, 459.]

In reference to the contention that under Federal Order No. 50 of the Director General of Railroads, the original suit of the administratrix against the Wabash Railway Company was improperly brought against the railway company instead of against the Director General. There is much conflict of authority as to whether said order is effective to require suits to be brought

against the Director General, some cases holding that they must be brought in that manner on the ground that the railway company cannot be held liable for the acts or neglect of his servants and agents but not on the ground that the Director General can deprive the courts of jurisdiction to determine whether the railway company in suits against it can be held for the acts or neglect of the servants and agents of the Director General. In other words, the question of whether the railway company or the Director General can be sued for the acts and conduct of the latter's servants and agents is not a jurisdictional question but the courts still retain jurisdiction to try such a suit on the merits and to determine if the Federal Control Act, together with General Order No. 50, is or is not a matter in bar to the merits of the action. In this connection it will be noted that the reason assigned in General Order No. 50 for its issuance was that—

". . . suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible."

The order in effect declares "Carriers" not responsible for the conduct of the Director General and his agents. We will hereafter point out that the Director General has no right to issue orders limiting the jurisdiction of the courts.

The courts still may lawfully issue and have served process to bring the railway company into court even though the petition bases the cause of action on the negligence of the servants of the Director General. However, there are many cases holding that the Federal statute, supra, provides for the suing of the carrier corporation itself. The cases *pro* and *con* are collated in the case of Hines v. Dahn, supra.

As before stated, there is nothing in the Federal statute or order of the Director General of Railroads preventing or assuming to prevent the suing of the

carrier as a corporation. The order does not prevent its
suing or the being sued. The Supreme Court of this
State in the case of Hite v. St. Joseph & G. I. Ry. Co.,
supra, held that the Federal statute, supra, provides for
the operation of railroads by the companies themselves
but under Federal control, and that an employee could
maintain an action against the railroad company even
though at the time of his injury the railroad was under
Federal control. This suit was brought before the pro-
mulgation of General Order No. 50 and we do not know
what the Supreme Court of this State would hold in
a case brought after October 28, 1918.

However, we find it unnecessary to go into the ques-
tion as to whether a recovery can be had against the rail-
way corporation for the acts of the Director General
in view of the Federal Control Act and his order No.
50, as the facts in this case show that the administratrix
had at least a bona-fide dispute or doubtful claim against
the railway company as such. This is shown by the fact
that the courts themselves do not fully agree as to
whether the suit may or may not be successfully prose-
cuted against the railway company instead of the Direc-
tor General of Railroads. There is no contention that
the administratrix did not have a good cause of action
from the standpoint of negligent conduct of one or the
other, nor is there any question but that the claim was
asserted in good faith. These facts together with the
further fact that a suit was pending at the time of the
compromise show that there was a sufficient considera-
tion for the settlement. [12 C. J. pp. 324, 326, 327;
Livingston v. Dugan, 20 Mo. 102; Wood v. Telephone
Co., 223 Mo. 537, 565.] There was not only sufficient
consideration for the settlement but the amount of money
under the agreement to settle was actually paid and
received by the administratrix. In view of all of these
facts it is not incumbent upon Elliott, in order to recover,
to show that the claim was a valid one in the sense that
claimant be able to recover on it. [12 C. J., pp. 329,
330.] This renders it unnecessary for us to hold that

the railway company is estopped to claim lack of consideration for the settlement by its conduct in accepting the fruits thereof after the amount of the settlement was paid the administratrix.  From what we have said we think there is no question but that Elliott is entitled to recover and that the court did not err in giving Elliott's declarations of Law Nos. 3, 4, & 7 and in refusing defendant's declarations of law Nos. 4, 5, 6, 7, 9, and 13.

It is insisted that if Elliott was entitled to recover, his recovery should be for only fifty per cent of the amount actually paid in settlement of the claim, that is, fifty per cent of $4,162.85, and for that reason the court erred in giving his declaration No. 2 and refusing defendant's declaration No. 3.  There was evidence tending to show that Williamson said to the administratrix, in making the settlement, that the part he paid to her was hers, to put the money in the bank, to use the money as her own, and that she would not have to divide the money with her lawyers.  While there was some evidence contradicting this, the finding of the trial court, sitting as a jury, on this conflict in the evidence is conclusive on us.  [Mytton v. Mo. Pac. Ry. Co., 211 S. W. 111.]  In view of this evidence the amount of settlement was not the amount of money actually paid the administratrix but the agreement was that the amount paid to the administratrix was only her part under the attorney's contract and not the attorney's portion.  As under the contract she had with Elliott her share was to be only fifty per cent of the whole sum, the total settlement was for twice the amount she received.  Therefore Elliott was entitled to recover one-half of the whole settlement which is a sum equal to that paid his client.  [Mytton v. v. N. Y. Central & St. L. Rd. Co., 198 S. W. 189; Mytton v. Mo. Pac. Ry. Co., supra; Kaemmerer v. St. Louis Elec. Ry. Co., 211 S. W. 687; Boyd v. Chase & Sons Mercantile Co., 135 Mo. App. 115; Curtis v. Met., 125 Mo. App. 369; Curtis v. Met., 118 Mo. App. 341.]

It is insisted that by reason of General Order Nos. 18 and 18-a, promulgated by the Director General of

Railroads, providing that suits against carriers must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose, the circuit court of Livingston county had no jurisdiction as the plaintiff resided in Shelby county and the cause of action arose in Iowa. The venue in transitory causes of action provided by the laws of the State could not be modified or limited by orders of the Director General as was attempted in General Orders 18 and 18-a. [State v. Calhoun, 220 S. W. 6; Haubert v. Baltimore & Ohio Rd. Co., 259 Fed. 361, 363; Moore v. Atchison, T. & S. F. Ry. Co., 174 N. Y. Supp. 60; Illinois Central R. Co. v. Ryan, 214 S. W. 642; El Paso & S. W. Rd. Co. v. Lovick, 210 S. W. 283; Pullman Co. v. Uribe, 225 S. W. 189; Young v. Hines, decided by this court but not yet reported.]

The judgment is affirmed. All concur.

## ON MOTION FOR REHEARING.

BLAND, J.—Since the foregoing opinion was handed down the case of Adams v. Q. O. & K. C. Rd. Co., has been published in the Southwestern Reporter (229 S. W. 190) and in its motion for a rehearing defendant contends that our decision is in conflict with that one of the Supreme Court. That decision holds that the railroad company is not liable for the acts of those employed in the railroad service during Federal control. On the original submission of this case we said: "This suit (Hite v. Railway, 225 S. W. 916) was brought before the promulgation of General Order No. 50 and we do not know what the Supreme Court of this State would hold in a case brought after October 28, 1918." The Supreme Court has answered this in the Adams case. However, we were careful in the opinion to say "we find it unnecessary to go into the question as to whether a recovery can be had against the railway corporation for the acts of the Director General," and placed our decision on the proposition that it was not necessary that

there could be such a recovery but as Mrs. Welker had a bona-fide doubtful claim against the railway corporation and that corporation settled it with her while the suit was pending against it, there was a sufficient consideration for the settlement and the settlement was paid and that, consequently, it was unnecessary for Elliott to show his client's claim was a valid one in the sense that the claimant be able to recover on it.

The fact that the claim was at least a doubtful one when the settlement was made is shown by the cases of Hite v. Railway, supra; Postal Tel. Co. v. Call, 255 Fed. 850; Jensen v. L. V. R. Co., 255 Fed. 795; Johnson v. McAdoo, 257 Fed. 757; Witherspoon v. Postal, etc., Co., 257 Fed. 758; The Catawissa, 257 Fed. 863; Dampskibs v. Hustis, 257 Fed. 862; Lavalle v. N. P. R. Co., 143 Minn. 74; Gowan v. McAdoo, 143 Minn. 227; Palyo v. N. P. R. Co., 175 N. W. 687; Ringquist v. M. and N. R. Co., 176 N. W. 344; McGregor v. G. N. R. Co., 172 N. W. 841; Franke v. C. & N. W. R. Co., 173 N. W. 701; M. P. R. Co. v. Ault, 216 S. W. 3; Lancaster v. Keebler, 217 S. W. 1117; Clapp v. Amer. Ex. Co., 234 Mass. 174; Owens v. Hines, 100 S. E. 617.

With the concurrence of ARNOLD, J., the motion for a rehearing is overruled and it is so ordered. *Trimble, P. J.,* dissents.

TRIMBLE, P. J. (dissenting.)—As I view this case, the opinion affirming the judgment herein is erroneous, consequently a rehearing should be granted.

The proceeding is to enforce, against the Wabash Railway Company, an attorney's lien, under section 691, Revised Statutes 1919, upon a cause of action based upon the wrongful death of Mern G. Welker, alleged to have been caused on April 2, 1918, by the said railway company. He *was* killed on the said *railroad* on said date, but at that time the same was in the hands of and being operated by the Director General of Railroads and not by the Wabash Railway Company, nor was the latter responsible for such death. [Adams v. Quincy, etc., R. Co., 229 S. W. 790.]

The contract between the attorney and plaintiff, and which gives rise to the lien under sec. 691, was to enforce a cause of action against the Wabash Railway Company and the notice given, and the suit that was brought by the attorney under that contract, was given to and was brought against the said railway company and not against the Director General. On November 16, 1918, the *Director General* settled with the plaintiff, paying her the sum of $4000 in full settlement of "all claims and demands at common law, or under the laws of any State. or of the United States" which she had, arising out of the said wrongful death. There can be no question whatever but that the Director General paid the money and settled the case. The settlement and release, signed by plaintiff, says he did, and the draft for the $4000 received by plaintiff in settlement of her case shows that the money was paid by him. The former recites that the release is made: "In consideration of the sum of Four Thousand Dollars ($4000) to me in hand *paid by W. G. McAdoo, Director General* of Railroads operating the Wabash Railroad" etc.; the draft for the $4000 bore the superscription "United States Railroad Administration W. G. McAdoo, Director General of Railroads" and was signed "Wabash R. R. Federal Account, F. L. O'Leary, Federal Treasurer."

Now, as I view it, the fallacy in the opinion of the majority is in holding that because the railway company used the settlement, made by the Director General, to get the suit against itself dismissed, therefore, the company is liable to plaintiff's attorney for his fee. I do not think this follows by any means. The Railway Company was not liable and *never has, even impliedly, admitted liability.*

It is true, one need not have an actual and valid cause of action against a party in order for the plaintiff's attorney, in the event of a settlement before judgment, to have a lien for his fee. All that is necessary is that there be in good faith a contention or reasonable dispute about the matter. In such case, if the

Elliott v. Wabash Ry. Co.

*other party* settles with the plaintiff, such other party thereby impliedly admits the validity of such claim and by the settlement precludes the possibility of litigating the issue of liability, and hence should not be allowed to assert against the attorney that there was not, in law or in fact, any liability.

But that is not this case. Here, the party that was sued *did not settle with or pay plaintiff*. That was done by a person who was not sued, but who was liable; and the company, which was sued but was not liable, merely used the settlement made by the Director General to effect the dismissal of the case against it. There was in this no implied admission of liability on the part of the Railway Company. The release executed by plaintiff in consideration of the money paid by the Director General, who was not sued but who was liable, *extinguished* or satisfied plaintiff's cause of action; and as there remained no live cause of action in her, the defendant Railway Company had the right to the benefit of that extinguishment by having the case dismissed as to it without making itself liable for, or subject to, the lien of plaintiff's attorney for his fee.

For these reasons, I cannot agree with my associates, and am of the opinion that the motion for rehearing should be sustained instead of being overruled.